IN the MATTER OF DISCIPLINARY PROCEEDINGS AGAINST
Dennis J. SIEG, Attorney at Law.

Supreme Court

*No. 93-1213-D. Submitted on briefs April 28, 1994—Decided
May 25, 1994.*

(Also reported in 515 N.W.2d 694.)

704

For the respondent-appellant and cross-respondent there were briefs filed by *Daniel W. Hildebrand* and *Ross & Stevens, S.C.,* Madison and *Robert O. Burr* and *Burr Law Office,* Madison.

For the Board of Attorneys Professional Responsibility there were briefs by *Paul W. Schwarzenbart* and *Lee, Kilkelly, Paulson & Kabaker, S.C.*, Madison.

PER CURIAM. *Attorney disciplinary proceeding; attorney's license suspended.*

This is an appeal and cross-appeal from the conclusions of the referee concerning Attorney Dennis Sieg's professional misconduct in connection with the traffic citations and convictions of his client using his brother's identity and Attorney Sieg's statement to a law enforcement officer investigating those convictions. Attorney Sieg appealed from the referee's conclusions that he knowingly made a false statement of fact to the investigating officer in the course of representing his client, knowingly assisted that client in conduct he knew was fraudulent and engaged in conduct involving dishonesty, fraud, deceit or misrepresentation. Although he takes the position that the referee's conclusions that he engaged in professional misconduct are improper, Attorney Sieg asserts in the alternative that, in the event the court determines that his conduct violated the rules regulating attorney professional conduct, the 60-day license suspension recommended by the referee as discipline is excessive and that a public reprimand would be appropriate. The Board of Attorneys Professional Responsibility (Board) cross-appealed from the referee's conclusion that there was no clear and convincing evidence that Attorney Sieg failed to disclose a fact to the court when disclosure was necessary to avoid assisting his client's fraudulent act.

While we do not adopt the referee's conclusions of law in respect to Attorney Sieg's having made a false statement to the investigating officer and knowingly

706

assisted his client in conduct he knew was fraudulent, we determine that the referee properly concluded that Attorney Sieg engaged in deceitful conduct in his response to the investigating officer and that he failed to disclose promptly to the court his client's fraudulent conduct once he became aware of it. The seriousness of that misconduct warrants the suspension of Attorney Sieg's license to practice law for 60 days.

Attorney Sieg was licensed to practice law in Wisconsin in 1980 and practices in Oregon, Wisconsin. He has not previously been the subject of an attorney disciplinary proceeding. Following a hearing, the referee, Attorney Rudolph P. Regez, made the following findings of fact.

On September 15, 1991, Gene Heiman, the driver of the vehicle in a one-vehicle accident, fled the scene and the officer investigating the accident determined that the vehicle was registered to Dennis Heiman. At the time of the accident, Gene Heiman's driver's license was suspended for prior traffic convictions and he had falsely registered his vehicle with the Division of Motor Vehicle in his brother's name. The following day, the officer spoke to a man who identified himself as Dennis Heiman but in fact was Gene Heiman, Dennis Heiman's brother. The officer then issued three citations in the name of Dennis Heiman for failure to have control of the vehicle, failure to notify law enforcement authorities of an accident and violation of seat belt requirements. Two weeks later, another officer issued a traffic citation for passing in a no-passing zone to the operator of a vehicle who identified himself as Dennis Heiman but who, in fact, was Gene Heiman.

Although the referee made no specific finding, the testimony at the hearing was undisputed that Attorney Sieg received a telephone call from a man identifying

707

himself as Dennis Heiman concerning the traffic citations and advised him to send him the citations and he would take care of them. Attorney Sieg had known the Heiman family for many years and had represented members of the family in a variety of matters since 1980. At the time relevant here, he was representing Gene Heiman as plaintiff in a personal injury action.

In the latter part of October, 1991, Attorney Sieg appeared by mail in circuit court and entered not guilty pleas in the two traffic matters on behalf of "Dennis Heiman." On December 27, 1991, he entered no contest pleas in each of the cases, upon which one charge was dismissed and convictions of the remaining offenses were entered against Dennis Heiman.

Shortly after the no contest pleas had been entered on December 27, 1991, Gene Heiman told Attorney Sieg that he had misrepresented himself as his brother when the officers issued citations in the traffic matters. When Attorney Sieg told Gene to inform his brother of that fact, Gene responded that he had already talked with Dennis and that Dennis said it was okay to use his name in regard to the traffic offenses. Attorney Sieg then told Gene to provide him with a statement in writing from his brother granting Gene permission to use his name in regard to the traffic offenses. Shortly after that conversation, Gene Heiman prepared what purported to be a consent from his brother, forged his brother's name to it and had it delivered to Attorney Sieg's office.

When Dennis Heiman received a letter from the Division of Motor Vehicles on February 4, 1992 informing him of the traffic convictions that had been entered on his record and that he would have to attend traffic school, Dennis Heiman contacted the court and learned that the convictions had been the result of no contest

pleas entered by Attorney Sieg. Later that day, Dennis Heiman telephoned Attorney Sieg, who told him that his brother had said it was okay to put the tickets on Dennis' driving record and that there even was a piece of paper with Dennis' signature on it saying it was okay to do so. Dennis Heiman told Attorney Sieg that what Gene Heiman had told him was not true and that he never would have agreed to it.

Two days later, February 6, 1992, Dennis Heiman contacted Detective Johnson of the county sheriff's department and told her of the traffic convictions that had been entered on his driving record. Later that day, Detective Johnson spoke with Gene Heiman, who admitted that he had posed as his brother when he was cited for the passing violation. He also told the detective that Attorney Sieg had told him to tell Dennis of the impersonation and that when he told Attorney Sieg he had already checked with his brother and Dennis said it was okay to use his name, Attorney Sieg told Gene to provide a written statement from Dennis giving Gene permission to do so. Gene Heiman also admitted to the detective that he had forged a purported consent from his brother and had it delivered to Attorney Sieg's office.

On February 7, 1992, Attorney Sieg telephoned Detective Johnson and told her that he represented Gene Heiman and that it was unnecessary that Gene Heiman meet with the detective that day, as had been arranged, because he was preparing an affidavit for Gene to sign regarding the traffic matters and would give Detective Johnson a copy. In a subsequent telephone conversation that day, when Detective Johnson asked Attorney Sieg to provide her with a copy of the written consent by which Dennis Heiman allegedly had given his brother permission to use his name in connec-

tion with the traffic offenses, Attorney Sieg responded that he would discuss that request with his client and get back to her.

By letter of February 7, 1992, Attorney Sieg sent Detective Johnson a copy of the affidavit in which Gene Heiman admitted he was the operator of the vehicles involved in the two traffic matters and had falsely identified himself to the officers as Dennis Heiman but said nothing about the forged consent. In his letter accompanying the affidavit, Attorney Sieg stated, "With regard to what you described as a slip of *[sic]* piece of paper signed by Dennis Heiman giving Gene Heiman permission to use his name if he was stopped by an officer, no such paper apparently exists." Thereafter, on February 26, 1992, Detective Johnson executed a search warrant on Attorney Sieg's office and obtained a file folder labeled "Heiman, Dennis J. (Gene)" containing a handwritten document dated December 21, 1991 stating, "To Dennis Sieg: This is Dennis Heiman and I will take the rap for *3 pts.* Elegal *(sic)* Passing for Gene but he must pay the fines in full and keep me out of it, from now on. (signed) Dennis Heiman." The referee found that the document was the forged consent to which Gene and Dennis Heiman had referred in their February 6, 1992 conversations with Detective Johnson. The referee also found that when Detective Johnson asked Attorney Sieg to produce the written consent Gene Heiman had described to her and at the time Attorney Sieg told Detective Johnson that no such piece of paper existed, Attorney Sieg knew of the consent Gene had described and that it was in his file.

Thereafter, Attorney Sieg, through a private investigator, sought to have Dennis Heiman sign a statement indicating, in part, that Attorney Sieg had been "surprised" to learn on February 4, 1992 that

710

Gene Heiman was actually the operator of the vehicles involved in the traffic matters. Dennis Heiman refused to sign the proffered statement because, based on his conversation with Attorney Sieg on February 4, 1992, he did not believe Attorney Sieg had been surprised to learn that Gene was actually the vehicle operator. Attorney Sieg, again through a private investigator, also tried to have Gene Heiman sign a statement indicating that it was in February, 1992 that Gene first disclosed to him that he was the operator of the vehicles involved in the traffic matters. Gene Heiman signed the statement only after he had crossed out "February" and inserted "January" as the time when he disclosed to Attorney Sieg that he was the vehicle operator in the traffic matters.

The referee found that Attorney Sieg knew from at least early to mid-January, 1992 that Gene Heiman was actually the vehicle operator and he could not have been surprised to learn of that fact from Dennis Heiman on February 4, 1992. The referee further found that Attorney Sieg undertook no action to correct the fraud that had been perpetrated on the court between the time he first learned of it in early to mid-January, 1992 and February 4, 1992, when Dennis Heiman telephoned him inquiring why he had entered no contest pleas to traffic offenses in his name.

On the basis of those facts, the referee concluded that there was clear and convincing evidence that Attorney Sieg knew of the existence of the forged consent in his file and that he knowingly made a false statement of fact to a third person in the course of representing a client, in violation of SCR 20:4.1(a),[1]

---

[1] SCR 20:4.1 provides:

**Truthfulness in statements to others**

711

when he told Detective Johnson there was no paper containing the signature of Dennis Heiman authorizing Gene Heiman to use Dennis' name in regard to the traffic citations and that, by that statement, he engaged in conduct involving dishonesty, fraud, deceit or misrepresentation, in violation of SCR 20:8.4(c).[2] The referee also concluded that there was clear and convincing evidence that Attorney Sieg knowingly assisted his client in conduct Attorney Sieg knew was fraudulent, in violation of SCR 20:1.2(d),[3] and thereby engaged in conduct involving dishonesty, fraud, deceit or misrepresentation, in violation of SCR 20:8.4(c), by asking his client to provide a written statement from his brother granting the client permission to use his brother's name in the traffic incidents after the client had told Attorney Sieg that he had misrepresented his identity to the arresting officers and to Attorney Sieg and by telling Detective Johnson that no paper existed

---

In the course of representing a client a lawyer shall not knowingly:

    (a)   make a false statement of a material fact or law to a third person;

[2] SCR 20:8.4 provides:

**Misconduct**

It is professional misconduct for a lawyer to:

. . .

    (c)   engage in conduct involving dishonesty, fraud, deceit or misrepresentation;

[3] SCR 20:1.2 provides:

**Scope of representation**

. . .

    (d)   A lawyer shall not counsel a client to engage, or assist a client, in conduct that the lawyer knows is criminal or fraudulent, but a lawyer may discuss the legal consequences of any proposed course of conduct with a client and may counsel or assist a client to make a good faith effort to determine the validity, scope, meaning or application of the law.

with the signature of Dennis Heiman giving his brother Gene permission to use his name if stopped by an officer.

The referee concluded, however, that there was no clear and convincing evidence to establish the Board's claims that Attorney Sieg knowingly made a false statement of fact to the court and failed to disclose a fact to the court when disclosure was necessary to avoid assisting a criminal or fraudulent act by a client, in violation of SCR 20:3.3(a)(1) and (2),[4] by appearing in court and entering pleas on behalf of "Dennis Heiman." The Board had alleged that Attorney Sieg knew when he entered appearances and pleas in the name of Dennis Heiman that Gene Heiman was in fact his client and had been the vehicle operator in the traffic matters but the referee found the evidence insufficient to make that finding.

As discipline for that misconduct, the referee recommended that the court suspend Attorney Sieg's license to practice law for 60 days. The referee explicitly rejected Attorney Sieg's testimony that he was unaware of the existence of the forged consent until it was discovered pursuant to the search warrant on February 26, 1992. The referee found credible Dennis Heiman's testimony that Attorney Sieg told him on February 4, 1992 that he had in his file a letter Dennis Heiman had signed giving his brother permission to use his name for purposes of the traffic citations. The

---

[4] SCR 20:3.3 provides:

**Candor toward the tribunal**

(a) A lawyer shall not knowingly:

(1) make a false statement of fact or law to a tribunal;

(2) fail to disclose a fact to a tribunal when disclosure is necessary to avoid assisting a criminal or fraudulent act by the client;

referee also noted that Dennis Heiman had refused to sign a proffered statement because it included a representation that Attorney Sieg seemed surprised on February 4, 1992 that Gene Heiman was the vehicle operator. The referee gave great weight to Dennis Heiman's testimony and found Attorney Sieg's testimony "questionable."

In his appeal, Attorney Sieg first argued that the referee erred in concluding that he had made a false statement of fact, in violation of SCR 20:4.1(a), when he told the detective that there apparently was no paper containing the signature of Dennis Heiman giving his client permission to use Dennis' name "if he was stopped by an officer." Attorney Sieg insisted that his statement was literally true, as the written permission he had in his file did not give his client permission to use Dennis' name "if he was stopped by an officer" and it was not, in fact, signed by Dennis Heiman but contained Dennis' signature his client had forged. Attorney Sieg asserted that he had acted in "a lawyer-like way" by precisely describing in writing his understanding of the document the detective had requested and stating that no such document, as so described, apparently existed. He also argued that his statement did not violate the ethical rule because the detective was not misled, as she ultimately obtained the document by executing a search warrant on his office.

It is unnecessary to adopt the referee's conclusion that Attorney Sieg made a false statement of a material fact to the detective in order to determine that he engaged in professional misconduct in his response to the detective. In addition to the rule, SCR 20:4.1(a), proscribing the making of a false statement of material fact to a third person, the referee concluded that Attorney Sieg's response violated SCR 20:8.4(c), which

specifies as professional misconduct a lawyer's engaging in "conduct involving dishonesty, fraud, deceit or misrepresentation." The circumstances surrounding Attorney Sieg's representation to the detective concerning the document she had requested establish that Attorney Sieg's conduct was deceitful and misrepresented the facts.

Attorney Sieg's "precisely worded" written response to the detective was not an isolated answer to a question. When the detective asked for, as she testified, "a copy of the written consent that Dennis had supposedly written giving Gene permission to use his name," Attorney Sieg knew that, on his advice, his client had given him what purported to be his brother's written permission to use his name in connection with the traffic offenses and that the writing was in his file. Moreover, Attorney Sieg knew when the detective made the request that Dennis Heiman had denied having written that consent and, further, that his client had admitted to the detective that it was he, not his brother, who was the operator of the vehicles involved in the traffic offenses. Attorney Sieg also was aware that neither the detective nor Dennis Heiman had seen the written permission or knew how it was worded. Finally, when asked to provide a copy of that document, Attorney Sieg did not respond to the request immediately; he said he would discuss it with his client and get back to the detective.

Attorney Sieg's written statement was more than merely a non-responsive or not fully responsive answer to a request for information. In light of what he knew when he made that response, Attorney Sieg's statement was deceitful. Whether or not it was literally or objectively accurate, Attorney Sieg's statement misrep-

resented the existence of a document as he knew it to be and as the detective had described it. His mischaracterization of the document the detective requested by adding the phrase "if he was stopped by an officer" so as to render accurate his statement that there was no such document does not, under the circumstances in which that statement was made, prevent the literally accurate response from being deceitful and a misrepresentation. Accordingly, although we do not adopt the referee's conclusion that Attorney Sieg made a "false statement of material fact," contrary to SCR 20:4.1(a), we determine, based on the totality of the circumstances at the time, that Attorney Sieg's written statement was deceitful and misrepresented the facts, in violation of SCR 20:8.4(c).

Attorney Sieg next argued that the referee erroneously concluded that he had knowingly assisted his client in conduct he knew was fraudulent, in violation of SCR 20:1.2(d), and thereby engaged in conduct involving dishonesty, fraud, deceit or misrepresentation, contrary to SCR 20:8.4(c), by telling his client to provide a written statement of his brother's consent to the fraudulent use of his name on traffic citations and by his statement to the detective that no paper existed with the signature of the brother giving his client permission to use the brother's name if stopped by an officer. To the extent it is based on his contention that the referee found that he had asked his client to provide a *false* written statement, that argument has no merit.

In his brief, Attorney Sieg misapprehended the referee's finding that he had "requested" that his client provide a written statement from his brother granting permission to use his name. Emphasizing the referee's use of the word "requested," Attorney Sieg incorrectly

understood the referee to have found that he had asked his client to prepare a false written consent purportedly signed by his brother. Had the referee so found, the referee doubtless would have recommended more severe discipline than the 60-day license suspension. In his report, the referee considered the 60-day license suspension appropriate, "taking into consideration the fact that [Attorney Sieg] and Gene Heiman did not initially collude to deceive the court." He continued, "If such charges had been established, a much more severe penalty would be required and recommended." There is no reason to believe the referee would have been of different mind if he had found that Attorney Sieg colluded with his client to further the fraud following the convictions.

The referee found that Attorney Sieg told his client to provide a written statement *from his brother* granting his client permission to use the brother's name in regard to the traffic offenses—what his client told him his brother had already done orally. On the basis of that fact, the referee concluded that Attorney Sieg assisted his client in conduct Attorney Sieg knew was fraudulent by continuing the use of a false name on traffic citations and on convictions that had been entered in the circuit court.

We are unable to adopt that conclusion. Attorney Sieg's advice to his client to obtain a written statement of his brother's permission to use his name and provide that statement to Attorney Sieg may have furthered the client's fraudulent conduct in having misidentified himself to the arresting officers and having the convictions entered in his brother's name but we find nothing in the record to establish that Attorney Sieg intended or could reasonably have expected it to do so. Nor was it

established that Attorney Sieg assisted his client in conduct he knew was fraudulent when he responded to the detective's request for a copy of the written consent. While we might surmise Attorney Sieg's motivation in advising his client to get in writing his brother's consent to the fraud, conjecture will not serve as a basis for the imposition of discipline for lawyer misconduct. Accordingly, we determine that Attorney Sieg's conduct in this respect did not violate SCR 20:1.2(d) or 20:8.4(c).

The next issue we address is raised in the Board's cross-appeal from the referee's conclusion that there was no clear and convincing evidence that Attorney Sieg failed to disclose the fact of his client's fraudulent identification in the traffic arrests and convictions when disclosure was necessary to avoid assisting the client in that fraudulent act, in violation of SCR 20:3.3(a)(2). The referee based that conclusion entirely on the allegations of the Board's disciplinary complaint that Attorney Sieg knew at the time he appeared and entered pleas in the name of Dennis Heiman that Gene Heiman was his client. The referee properly concluded that the evidence failed to establish that Attorney Sieg had that knowledge when he appeared in court.

Nevertheless, there is evidence in the record that supports a conclusion that Attorney Sieg violated SCR 20:3.3(a)(2) by failing to disclose his client's fraud upon the court when he learned of it, as the referee found, in early to mid-January, 1992, shortly after the traffic matters had been concluded. Attorney Sieg claimed he had intended to take corrective action but that claim is inconsistent with the fact that when his client told him he had misrepresented his identity and that his brother had approved it, rather than acting promptly to remedy the client's fraud, one that he had furthered,

718

albeit unwittingly, by appearing and entering pleas to the traffic charges, Attorney Sieg merely told his client to obtain in writing what the client reported was his brother's oral consent to the fraud. Attorney Sieg took no action to disclose that fraud until after Dennis Heiman told him on February 4, 1992 that he had discovered the traffic convictions entered in his name and that he had never given his brother permission to assume his identity in the matter of the traffic offenses. He did not meet with his client to prepare an affidavit admitting the false identification until after he learned that the brother had discovered it and disavowed any approval of it and after his client had admitted to the investigating officer that he had posed as his brother and had forged the written consent he had provided to Attorney Sieg. Notwithstanding his contention, any action Attorney Sieg might have taken to correct his client's fraud if the brother had not discovered it and intended to rectify it is purely speculative.

The serious nature of Attorney Sieg's professional misconduct in failing promptly to disclose his client's fraud on the traffic officers and the circuit court and his deceit and misrepresentation to a law enforcement officer concerning the existence of evidence of that fraud warrants the suspension of his license to practice law for the minimum period, 60 days. By that conduct, Attorney Sieg violated his primary professional duty of honesty to the courts and the legal system.

It Is Ordered that the license of Dennis J. Sieg to practice law in Wisconsin is suspended for a period of 60 days, commencing July 5, 1994.

It Is Further Ordered that within 60 days of the date of this order Dennis J. Sieg pay to the Board of Attorneys Professional Responsibility the costs of this

719

disciplinary proceeding, provided that if the costs are not paid within the time specified and absent a showing to this court of his inability to pay the costs within that time, the license of Dennis J. Sieg to practice law in Wisconsin shall remain suspended until further order of the court.

IT IS FURTHER ORDERED that Dennis J. Sieg comply with the provisions of SCR 22.26 concerning the duties of a person whose license to practice law in Wisconsin has been suspended.